IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01384–KMT

GREGORY A. RAEL,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

      This matter comes before the court on review of the Commissioner's denial of Plaintiff

Gregory A. Rael's application for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act").

Jurisdiction is proper under 42 U.S.C. § 405(g).  Plaintiff filed his opening brief on January 22,

2015 (Doc. No. 15 ["Opening Br."]), Defendant filed her Response Brief on March 18, 2015

(Doc. No. 16 ["Resp."]), and Plaintiff filed his Reply Brief on March 26, 2015 (Doc. No. 17

["Reply"]).

**FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff applied for DIB and SSI in March 2011, alleging that he had been disabled since

October 2010 due to chronic back pain.  (*See* Doc. No. 11, Social Security Administrative

Record ["AR"] at 118-24, 125-26, 149.)  The Commissioner denied both applications.  (*Id.* at 43,

44.)  Following the denials, Plaintiff requested and received a hearing by an Administrative Law

Judge ("ALJ"). (*Id.* at 32-42, 65-66.)  After the hearing, the ALJ determined Plaintiff was not

disabled within the meaning of the Act, because Plaintiff was still capable of performing his past

relevant work as well as other substantial gainful work in the national economy. (*Id.* at 20)  The

Appeals Council subsequently denied Plaintiff's request for review (*id.* at 2), making the ALJ's

decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R.

§§ 404.981, 422.210(a).  Plaintiff timely sought review by the Court.

## STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical

and/or mental impairments preclude him from performing both his previous work and any other

"substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When

a claimant has one or more severe impairments the Social Security [Act] requires the

[Commissioner] to consider the combined effects of the impairments in making a disability

determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. §

423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of

impairments does not require a finding that an individual is disabled within the meaning of the

Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting

as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley*

*v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled:

    1.      The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.      The ALJ must then determine whether the claimed impairment is "severe."  A
        "severe impairment" must significantly limit the claimant's physical or mental
        ability to do basic work activities.
3.      The ALJ must then determine if the impairment meets or equals in severity
        certain impairments described in Appendix 1 of the regulations.
4.      If the claimant's impairment does not meet or equal a listed impairment, the ALJ
        must determine whether the claimant can perform his past work despite any
        limitations.
5.      If the claimant does not have the residual functional capacity to perform his past
        work, the ALJ must decide whether the claimant can perform any other gainful
        and substantial work in the economy.  This determination is made on the basis of
        the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).  *See also Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir.

1988).  The claimant has the initial burden of establishing a disability in the first four steps of

this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The burden then shifts to the

Commissioner to show that the claimant is capable of performing work in the national economy.

*Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is

conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Services*, 933 F.2d

799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the

ALJ applied the correct legal standard and whether the decision is supported by substantial

evidence.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d

at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.

*Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v.

Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner.  *Thompson*, 987 F.2d at 1487.

The court may not affirm an ALJ's decision based on a *post-hoc* rationale supplied in an appellate brief, since doing so would "usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004).  Although the Tenth Circuit has applied the doctrine of harmless error in administrative appeals, it is only appropriate where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145.

## ANALYSIS

Plaintiff argues that the ALJ (1) failed to properly assess the opinion of the treating physician, Dr. Rusin, (2) erred in adopting the opinion of Dr. Rusin but failing to account for Dr. Rusin's opined limitations, (3) did not have valid reason for rejecting a portion of Dr. Rusin's opinion, and (4) failed to properly assess Plaintiff's credibility.  (*See* Opening Br.)

### 1.  Treating Physician's Opinion

Plaintiff's first three issues on appeal center around the ALJ's evaluation and application of his treating physician, Dr. Rusin's, opinion.  When an ALJ is considering a treating physician's opinion, the ALJ is required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350

F.3d 1297, 1300 (10th Cir. 2003) (internal quotations and alteration omitted).  These reasons

must be specific and legitimate.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  This

requires a level of specificity that is sufficient "to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight."  *Watkins*, 350 F.3d at 1300 (internal quotations omitted).  In the absence of these

reasons, the court cannot determine if there is relevant evidence that adequately supports the

ALJ's conclusion or if the ALJ even applied the proper legal standard to arrive at that

conclusion.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996).

Plaintiff contends the ALJ did not initially assess Dr. Rusin's opinion for entitlement to

controlling weight.  However, the decision does not support this assertion.  While the ALJ did

not state explicitly that he was not giving Dr. Rusin's opinion controlling weight, his thorough

analysis throughout the decision illustrated that he was declining to give Dr. Rusin's opinion

controlling weight.  *Martinez v. Colvin*, No. 14-cv-2593-RBJ, 2016 WL 537937 (D. Colo. Feb.

11, 2016) ("[W]hen an ALJ's analysis of what weight to afford a treating physician's opinion

makes clear that the ALJ implicitly declined to give the opinion controlling weight, the decision

should not be reversed for failing to separately address each step."); *see also Tarpley v. Colvin*,

601 F. App'x 641, 643-44 (10th Cir. 2015) (holding that the ALJ did not err by declining to

afford significant weight to a treating physician's opinion, given that the ALJ provided an

adequate explanation of his decision that was consistent with the relevant legal factors

considered in such an analysis).

After declining to give a treating physician's opinion controlling weight, an ALJ must

consider six factors to determine the level of weight to give the opinion:  (1) the examining

relationship between the physician and the applicant; (2) the length, nature, and extent of their

treatment relationship; (3) the strength of the evidence supporting the opinion; (4) the

consistency of the opinion with the record as a whole; (5) the physician's specialty; and (6) any

other factors, such as the physician's familiarity with disability programs and the extent of his

familiarity with other information in the record, that tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52

F.3d 288, 290 (10th Cir. 1995).  The ALJ need not discuss each individual factor, s*ee Oldham v.*

*Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), so long as the ALJ provides "good reasons in the

notice of determination or decision for the weight he ultimately assigns the opinion."  *Watkins*,

350 F.3d at 1301  (internal quotations, internal brackets, and citation omitted).

Plaintiff argues the ALJ's decision to reject Dr. Rusin's opinion that Plaintiff needs to lie

down every 3-4 hours should only have resulted in the ALJ not giving Dr. Rusin's opinion

controlling weight, rather than rejecting Dr. Rusin's opinion altogether.  (Opening Br. at 23-24.)

However, the ALJ did not reject Dr. Rusin's opinion in its entirety.  As illustrated below, the

ALJ adopted the portions of Dr. Rusin's opinion that were adequately supported by her own

records or other medical evidence of record.  (AR at 18, 19.)  With regard to Dr. Rusin's opinion

that Plaintiff must be able to lie down, the ALJ found that no other treating or examining

physician had reached this conclusion and that Dr. Rusin had not provided any rationale for the

same.  (AR at 19.)

Plaintiff complains that the ALJ indicated he adopted Dr. Rusin's findings Residual

Functional Capacity ("RFC") assessment, yet the ALJ's RFC differs from Dr. Rusin's.  (Opening

Br. at 26.)  The ALJ never indicated in his decision that he was adopting Dr. Rosin's RFC

assessment in its entirety.  Instead, he stated, "[C]onsistent with the findings from the

consultative examiner, treating provider, Dr. Rusin, and State agency medical consultant, the

undersigned finds that, the claimant retains the ability to perform work at the light exertional

level." (AR at 17.)  The ALJ's ultimate RFC provides that Plaintiff can perform work at the light

exertional level, although it also includes postural and manipulative restrictions.  (AR at 19-20.)

These restrictions differ from Dr. Rusin's RFC but the RFC still falls into the light exertional

work category, consistent with the ALJ's statement regarding adopting Dr. Rusin's opinion in

that regard.

Moreover, the ALJ provided specific reasoning to support his rejection of Dr. Rusin's

postural and manipulative limitations.  Dr. Rusin concluded Plaintiff could *rarely* stoop, crawl,

and kneel, *seldom* squat and *occasionally* reach.  (AR at 18, 294.)  By contrast, the ALJ found

that Plaintiff could occasionally, as opposed to rarely, stoop, crawl and kneel and had no

restrictions on his ability to reach.  (AR at 19.)  Consistent with the factors the ALJ is supposed

to consider in determining the weight to give a treating physician's opinion, *supra*, the ALJ

noted that when Dr. Rusin completed her assessments, her treating relationship with Plaintiff was

very brief.  (AR at 19-20.)  *See* 20 C.F.R. § 404.1527(c)(2) (providing that a court should

consider the length of the treating relationship and whether the physician has obtained a

"longitudinal picture" of the claimant's impairment); *Goatcher*, 52 F.3d at 290.  Dr. Rusin did

not begin to treat Plaintiff until November 2011 and had only seen Plaintiff on four occasions

before she completed her assessment forms in August 2012.  (AR at 18-19, 326-45).  The ALJ

also explained that Dr. Rusin found Plaintiff's limitations had been present since 2008, but she

had only been seeing him since November 2011 "and there is no evidence that she ever received or reviewed prior treatment notes." (AR at 19, 292.)

The ALJ further noted that Dr. Rusin's assessment forms were internally inconsistent. (AR at 19.) *See* 20 C.F.R. § 404.1527(c)(3), (4) (directing the ALJ to consider the extent to which the treating physician's opinion is supported by and consistent with other medical evidence); *Goatcher*, 52 F.3d at 290. On the Med-9 Form[1], Dr. Rusin concluded that Plaintiff was disabled and unable to work at any job. (AR at 292.)[2] On the other, Dr. Rusin's limitations indicate Plaintiff could perform at the light, exertional level. (AR at 19, 293-94.)

Further, the ALJ considered Dr. Rusin's examination and treatment of Plaintiff specifically pertaining to manipulative and postural capabilities. See 20 C.F.R. § 404.1527(c)(2)(ii); *Goatcher*, 52 F.3d at 290. Dr. Rusin's most severe limitations were related to Plaintiff's ability to crawl, stoop, kneel, squat and reach. (AR at 294.) Yet, as the ALJ noted, there is no evidence in the record indicating Dr. Rusin "examined [Plaintiff's] range of motion throughout his entire spinal component or in his major upper and lower extremity joints." (AR at 19, 310-45.) Her examination of Plaintiff on the day of Dr. Rusin's assessments was limited, indicating only that Plaintiff had a "waddling gait" and "walking stiff and slightly leaning forward." (AR at 19, 326-28.)

---

[1] As noted by the Commissioner, "Med–9" forms are used by the Colorado Department of Human Services in determining eligibility for the State Aid to the Needy and Disabled program. (Resp. at 12; Doc. No. 292.)

[2] The issue of whether a claimant is disabled and/or unable to work is an issue reserved for the Commissioner and a physician's conclusion in that specific regard is not entitled to any special weight. 20 C.F.R. § 404.1527(d). *See also Kava v. Colvin*, No. 12–cv–02759–LTB, 2014 WL 128161, at *7 (D. Colo. 2014) (noting that the ALJ is not bound by a treating physician's opinion on issues reserved to the Commissioner).

Plaintiff also argues the ALJ did not have a valid reason for rejecting Dr. Rusin's opinion that Plaintiff must be able to lie down every 3-4 hours.  The ALJ stated, "There is no objective or clinical evidence in the record to support such a limitation, and it appears Dr. Rusin just relied on the claimant's subjective reporting of symptoms and limitations when making this finding."  (AR at 20.)  As Plaintiff points out, the ALJ follows this statement with "As explained previously, there exists good reasons for accepting the validity of the claimant's statements."  (*Id.*)  While this is confusing on first glance, it is clear in reading the decision as a whole that the confusion stems merely from a scrivener's error on the part of the ALJ and not a substantive conflict.

As discussed in more detail below in addressing Plaintiff's challenge to the ALJ's credibility analysis, the ALJ set forth detailed analysis supporting his conclusion that Plaintiff's subjective complaints were not entirely credible.  *See, cf., Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) ("The ALJ incorrectly stated that the surgeries took place in 'early 2004,' but we agree with the Commissioner that this was a mere scrivener's error and did not affect the outcome of the case.  The ALJ had noted the correct date of the surgeries earlier in his decision."); *Ramsey v. Barnhart*, 117 F. App'x 638, 641 (10th Cir. 2004) ("It is obvious from the text of this rule and from the ALJ's decision as a whole that the omission of the word 'not' in the ALJ's finding represents a typographical error, rather than a fatal ambiguity in the decision."). The court will not reverse the decision based on a scrivener's error because reading the sentence in context, it is clear the ALJ intended to say "*not* accepting the validity of the claimant's statements."

The reasons cited by the ALJ in support of his decision to afford less than controlling weight to Dr. Rusin's opinion all are legitimate and find adequate support in the record.  Plaintiff

also argued that due to the ALJ's failure to adopt Dr. Rusin's RFC assessment in its entirety, he

made additional errors at steps four and five.  However, in light of this court's finding that the

ALJ did not err in his consideration of Dr. Rusin's opinion, it is not necessary to address this

argument.

**2.  Credibility Analysis**

Plaintiff also argues that the ALJ erred in his credibility analysis.  Credibility

determinations are the province of the ALJ, and the Court will not upset those determinations

when they are supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898

F.2d 774, 777 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept

as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  Rather than bald conclusions in

the guise of findings, the ALJ must cite specific reasons for doubting the claimant's credibility,

especially when subjective pain testimony is crucial. *See Kepler v. Chater*, 68 F.3d 387, 391

(10th Cir. 1995).  A claimant's statements about the intensity and persistence of subjective

symptoms like pain may not be disregarded solely because they are not substantiated by

objective medical evidence. SSR 96-7p, 1996 WL 374186 at *2.  When evaluating the credibility

of a claimant's symptom testimony, the ALJ must consider a multitude of factors, including the

extensiveness of the claimant's attempts to obtain relief, the frequency of the claimant's medical

contacts, the nature of the claimant's daily activities, subjective measures of credibility within

the ALJ's judgment, and the consistency or compatibility of the claimant's testimony with

objective medical evidence.  *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004).

Here, the ALJ found that the "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR at 14.)  On appeal, Plaintiff argues that in assessing Plaintiff's credibility, the ALJ failed to follow the two step process set forth in 20 C.F.R. § 404.1529, requiring the ALJ to first determine whether the plaintiff has a medically determinable impairment that could be expected to cause the alleged symptoms and then evaluate the intensity and persistence of the same to determine how the symptoms limit the capacity for work. Plaintiff contends the ALJ failed to comply with the second requirement.  The court disagrees.

While the ALJ may not have set out his credibility analysis in the sequential manner Plaintiff references, this is not a basis for reversal.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (holding that the ALJ need not make a "formalistic factor-by-factor recitation of the evidence," noting that ultimately, "common sense, not technical perfection," is the court's guide.).  Here, the ALJ tied his credibility conclusions to the evidence throughout his decision.  Also, contrary to Plaintiff's assertion, the ALJ specified the alleged symptoms he did not find credible.

The ALJ noted Plaintiff was able to work in 2007 and that medical imaging since that time has not shown any change in the degenerative alterations in his lumbar spine since March 2007.  (AR at 14.)  The ALJ also noted time periods in which Plaintiff did not seek medical treatment, stating, "[D]espite the claimant's allegations of debilitating back pain, the record reflects significant gaps in his history of treatment."  (*Id.*) (footnote omitted).  Further, the ALJ explained that in January 2010, Plaintiff was "recommended for home spine strengthening and flexibility exercises, and physical therapy.  The undersigned notes that, there is no evidence that, he ever sought or completed a course in physical therapy."  (AR at 15.)  *See Shepherd v. Apfel*,

184 F.3d 1196, 1202 (10th Cir. 1999) (finding that the ALJ reasonably noted the claimant's

physical therapy sessions were cancelled because he failed to show up for them).

Further specifying the alleged symptoms he did not find credible, the ALJ stated that the

record did not support Plaintiff's claim that he has a limited ability to walk or sit.  (AR at 16.)  In

reaching this conclusion, the ALJ reviewed Dr. Rusin's records, which indicated she has

followed a conservative treatment plan, mostly relying on medication, and that her notes reflect

only that Plaintiff has exhibited a waddling gait, has decreased range of motion secondary to

pain, and his spine is normal in appearance with normal stability and muscle strength and tone.

(*Id.*).  The ALJ further noted, "[S]ubsequent MRI scans, completed in February 2012, showed no

changes to prior imaging, and new lesion."  (*Id.*)  Based on the above evidence, the ALJ

concluded, "None of these findings support claimant's statements regarding a limited ability to

walk or sit."  (*Id.*)

The ALJ also found that Plaintiff's statements regarding an inability to sit, stand, or walk

for more than minimal periods, or lift more than a few pounds were not credible.  (AR at 17.)  In

so concluding, the ALJ explained,

> In searching for evidence that would support the claimant's allegations, the
> undersigned notes that the claimant has not reported any ongoing low back
> symptoms on a consistent basis since either his original injury date, or since his
> alleged onset date.  The objective evidence fails to provide a compelling basis for
> the claimant's statements regarding his radicular symptoms into his right leg, as
> repeated imaging shows no spinal cord compression or nerve root impingement.
> In fact, repeated scans show his condition has been stable, with no progression of
> his disease.  Other than Dr. Rusin's notes, which reflect some limitation in the
> claimant's range of motion, there are no clinical findings of a significantly
> reduced range of motion in any spinal component.  The undersigned notes that,
> she failed to specify the degree of limitation, or whether he could achieve full
> range of motion, with pain, as Dr. Lily noted.  There also is no annotation of any
> motor, sensory, or reflex deficits.

(AR at 16-17.)

Further weakening Plaintiff's credibility, the ALJ also found significant inconsistencies between Plaintiff's medical records and the information he provided to medical providers. (AR at 15-16.) The Tenth Circuit has noted that inconsistent evidence or contradictory statements constitute a legally sufficient reason for disbelieving the claimant's subjective complaints. *Shepherd*, 184 F.3d at 1202; *Brown v. Bowen*, 801 F.2d 361, 363 (10th Cir. 1986).

Plaintiff informed Dr. Rusin that Dr. Lily continued to prescribe medication to him after October 2010, however, Dr. Lilly's treatment records do not support this. (*Id.*) The ALJ also noted a more significant discrepancy:

> Although he reported to Dr. Rusin that, Dr. Lilly recommended both intra-discal electrothermal (IDET) therapy and surgery for his condition, his statements are not supported by Dr. Lilly's records. In fact, Dr. Lilly only noted that, a future consideration not supported by Dr. Lilly's records. In fact, Dr. Lilly only noted that, a future consideration would be IDET therapy and surgery, but never recommended as a current option. In fact, in October 2008, he indicated that, the claimant was not a candidate for surgery.

(AR at 17.) The ALJ concluded, "Despite claiming extreme limitations in his exertional capacities and stamina, the record provides no consistent and convincing evidence over time, and the undersigned cannot find the testimony and alleged limitations of the claimant to be well supported." (*Id.*)

Though the ALJ did not offer a formalistic factor-by-factor recitation of the evidence, the ALJ clearly demonstrated that he considered the required factors when assessing Plaintiff's credibility. The court therefore finds that Plaintiff's challenge to the ALJ's credibility analysis is without merit.

Accordingly, it is

      **ORDERED** that the ALJ's denial of social security disability benefits is **AFFIRMED**.

      Each party shall bear its own costs and attorney's fees.

      Dated this 30th day of March, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge